UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RICHARD CROWELL,

           Plaintiff,                             Case No. 2:14-cv-44

v.                                                    Honorable R. Allan Edgar

MICHELLE PARSONS et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint on immunity grounds and/or for failure to state a claim against Defendants Gerth, Trierweiler and White. The Court will also dismiss Plaintiff's claims under 18 U.S.C. §§ 241 and 242 for failure to state a claim. The Court will serve the remaining claims against the Defendants Parsons, Rhodes, Pandya, Borgerding, Stieve, Corizon, Inc., and Westcomb.

**Discussion**

I.      Factual allegations

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility but complains of events that occurred at the G. Robert Cotton Correctional Facility (JCF) and Alger Correctional Facility (LMF). In his *pro se* complaint, Plaintiff sues JCF Assistant Resident Unit Supervisor (ARUS) Michelle Parsons, JCF Dr. Karen Rhodes, Michigan Department of Corrections (MDOC) Regional Medical Officers (RMO(s)) Drs. Harrish Pandya and William Borgerding, MDOC Chief Medical Officer (CMO) Dr. Jeffrey Stieve, Corizon, Inc., LMF Physician Assistant (PA) Amy Westcomb, LMF Grievance Coordinator W. Trierweiler, LMF ARUS Denise Gerth and LMF Mail Clerk Carol White.

In his complaint, Plaintiff states that he suffers the following ailments, which require special accommodations: (1) sleep apnea and restless leg syndrome that requires single cell housing; (2) chronic pain issues from irritable bowel syndrome, spinal stenosis, gastroesophageal reflux disease (GERD), degenerative disc disease, osteoarthritis and bone spurring that requires special shoes, a prescription for Nexium and prevents Plaintiff from working; and (3) a wool allergy that requires cotton blankets. Plaintiff lists his allegations by Defendant(s).

<u>Defendants Parsons and Rhodes</u>: On July 6, 2012, Plaintiff states that Dr. Rhodes approved all of Plaintiff's special accommodations except for the Nexium prescription. On November 27, 2012, Plaintiff alleges that he filed three grievances against ARUS Parsons. Three days later, Plaintiff claims that Parsons retaliated against him by contacting health care services and specifically, Dr. Rhodes, to revoke all of Plaintiff's special accommodations. As a result, Plaintiff's special accommodations were canceled. Plaintiff contends that Defendants Parsons and Rhodes

violated his First, Eighth and Fourteenth Amendment rights, 18 U.S.C. §§ 241 and 242, state law and MDOC policies.

Defendant Pandya: Plaintiff provides that RMO Dr. Pandya always approved Plaintiff's medication and special accommodations even if they had been previously denied by health care. After Drs. Parsons and Rhodes revoked all of Plaintiff's special accommodations on November 30, 2012, however, Plaintiff alleges that Dr. Pandya refused to provide Plaintiff with any special accommodations. Plaintiff contends that Dr. Pandya violated his Eighth and Fourteenth Amendment rights, 18 U.S.C. §§ 241 and 242, state law and MDOC policies.

Defendant Stieve: As MDOC CMO, Plaintiff states that Dr. Stieve is the head of the Pain Management Committee (PMC). Plaintiff claims that he has chronic pain issues from spinal stenosis, osteoarthritis, bone spurring, degenerative disc disease and GERD. Between 2004 and 2012, Plaintiff received pain medication from health care. In 2011 or 2012, Dr. Stieve changed the policy for the disbursement of pain medication and required prisoners to obtain PMC approval for pain medication. On March 19, 2013, Plaintiff requested pain management approval from PMC. On April 3, 2013, Dr. Stieve allegedly rejected Plaintiff's application and canceled his "eight year pain regimen with no comparable treatment." (Compl., Page ID#20.) Plaintiff alleges that Dr. Stieve violated his Eighth and Fourteenth Amendment rights, 18 U.S.C. §§ 241 and 242, state law and MDOC policies.

Defendant Borgerding: In 2013, Plaintiff alleges that RMO Dr. Borgerding denied requests by PA Westcomb and a nurse practitioner for Plaintiff to be placed on Nexium. As a result, Plaintiff states that he is in constant pain in violation of his Eighth and Fourteenth Amendment rights, 18 U.S.C. §§ 241 and 242, state law and MDOC policies.

Defendant Corizon, Inc.:  Plaintiff states that Corizon failed to remedy the lack of medical care for Plaintiff or correct the actions of Drs. Pandya, Stieve and Borgerding, in violation of his Eighth and Fourteenth Amendment rights.

Defendant Westcomb:  As his medical provider from March 13 to October 9, 2013, Plaintiff claims that PA Westcomb refused to treat Plaintiff for his chronic pain, wool allergy and irritable bowel syndrome.  Plaintiff states that Westcomb also falsified information in Plaintiff's chart, and, thus, violated Plaintiff's Eighth and Fourteenth Amendment rights, 18 U.S.C. §§ 241 and 242, and state law.

Defendant Trierweiler: Plaintiff alleges that Grievance Coordinator Trierweiler retaliated against him for filing grievances "by engaging in obstuctionistic and repressive tactics to deny legitimate redress and court access."  (Page ID##10, 24.)  As a result, Plaintiff states that Trierweiler violated his First and Fourteenth Amendment rights and 18 U.S.C. §§ 241 and 242.

Defendant White:  Plaintiff alleges that Mail Clerk White unlawfully rejected Plaintiff's mail for being Uniform Commercial Code (UCC)  material on June 19, 2013.  Plaintiff states that he merely filed an "oath of fidelity" lien with the secretary of state against a corrections officer.  (Compl., Page ID#10.)  Plaintiff provides that when he inquired with White as to why she rejected his mail, she retaliated by writing a misconduct ticket against Plaintiff.  Plaintiff claims that White violated his First and Fourteenth Amendment rights, 18 U.S.C. §§ 241 and 242, state law and MDOC policies.

Defendant Gerth:  Plaintiff states that Hearing Officer Gerth held an administrative hearing on June 21, 2013, regarding mail that was rejected by Mail Clerk White as UCC material. Plaintiff alleges that Gerth acknowledged that the rejected material was not UCC material but Gerth

-4-

still upheld the misconduct ticket. As a result of the misconduct ticket, Plaintiff claims that Defendant Gerth posted a note on Plaintiff's door that Plaintiff could only mail letters through Gerth or her supervisor, and, thus, created delays in his mail in violation of his due process rights. Plaintiff also contends that Gerth "retaliated against Plaintiff while [he was] engaged in protect[ed] conduct to wit[:] government redress." (Compl., Page ID#25.) Plaintiff alleges that Gerth violated his First and Fourteenth Amendment rights and 18 U.S.C. §§ 241 and 242.

For relief, Plaintiff requests injunctive relief and punitive damages.

II. **Judicial Immunity**

Plaintiff alleges that Defendant Gerth wrongfully convicted Plaintiff guilty of a misconduct ticket. Plaintiff also claims that Defendant Gerth retaliated against Plaintiff for filing grievances by finding him guilty of his misconduct ticket.[1] Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted). Defendant Gerth is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be

---

[1]Reading Plaintiff's complaint liberally, Plaintiff appears to assert an access-to-the-courts claim against Defendant Gerth for delays in sending his mail. Plaintiff also broadly claims that Defendant Gerth retaliated against him. To the extent that Plaintiff's First Amendment claims are outside his role as a hearing officer, the Court will analyze those claims, *infra*.

in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Defendant Gerth is immune from damages.

Moreover, injunctive relief is not available under § 1983, because that statute provides that injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred. *See Coleman v. Gov. of Mich.*, 413 F. App'x 866, 874 (6th Cir. 2011) (holding that judicial officials were entitled to judicial or quasi-judicial immunity from claims seeking legal and equitable relief based on defendants' application of MICH. COMP. LAWS § 600.2963).

    III.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     **First Amendment - Retaliation**

Reading Plaintiff's complaint liberally, Plaintiff alleges that Defendants Gerth, Trierweiler and White retaliated against him for filing grievances. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of grievances is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999).

### 1.     **Defendants Gerth and Trierweiler**

Plaintiff contends that Defendant Gerth "retaliated against Plaintiff while [he was] engaged in protect[ed] conduct to wit[:] government redress." (Compl., Page ID#25.) Plaintiff alleges that Defendant Trierweiler retaliated against him for filing grievances "by engaging in obstuctionistic and repressive tactics to deny [Plaintiff] legitimate redress and court access." (Compl., Page ID##10, 24.) It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiffs retaliation claims against Defendants Trierweiler and Gerth are wholly conclusory. Plaintiff merely alleges the ultimate fact of retaliation against Defendants Trierweiler and Gerth. He has not presented any facts to support his conclusion that Defendants Trierweiler and Gerth retaliated against him because he filed grievances. Accordingly, his speculative allegations fails to state a First Amendment retaliation claim against Defendants Trierweiler and Gerth. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

2. **Defendant White**

After Plaintiff inquired into the rejection of his mail as prohibited UCC material, Plaintiff alleges that Mail Clerk White retaliated against him by giving him a misconduct ticket. Plaintiff admits that he was ultimately found guilty of the misconduct ticket. The Sixth Circuit has found that a finding of guilt for a misconduct ticket based on some evidence of a violation of prison rules essentially "checkmates" a retaliation claim. *Lewis v. Turner*, 16 F. App'x 302 (6th Cir. 2001); *see also Bey v. Frechen*, No. 2:05-cv-201, 2006 WL 2632564, at *2 (W.D. Mich. 2006); *Coleman v. Gerth*, No. 2:05-cv-158, 2006 WL 2714959, at *4 (W.D. Mich. 2006). The Sixth Circuit's application of this rule has been unwavering. *See Burton v. Rowley*, 2000 WL 1679463, at *2 (6th

Cir. 2000) (A finding of guilt based on some evidence of a violation of prison rules "essentially checkmates [a] retaliation claim."). Because Plaintiff was found guilty of the misconduct ticket, Plaintiff's retaliation claim against Defendant White was "checkmated," and fails to state a claim. *See id.*

### B. First Amendment - Free Speech

Plaintiff alleges that the confiscation of his mail as UCC material by Defendant White violated his right to free speech and communication under the First Amendment. It is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). The courts routinely have recognized that prisoners and their correspondents have a First Amendment interest in communication. *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (construing prior, broader version of MDOC Policy Directive 05.03.118 ¶ HH(23) (effective Jan. 1, 2006) as unconstitutionally vague) (citing *Procunier v. Martinez*, 416 U.S. 396, 417 (1974)). Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85. Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547). When reviewing an inmate's claim of a constitutional violation, courts must balance this policy of judicial

restraint with the need to protect the inmate's constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See Rector v. Caruso*, No. 1:10-cv-904, 2011 WL 446149, at *5 (W.D. Mich. 2011) (citing cases). It is also well-established that safety and internal security are legitimate penological goals for prison administrators. *Id.* at *6. The MDOC can confiscate UCC materials under the narrower rules in MDOC Policy Directive 05.03.118 (effective Sept. 14, 2009). *Johnson v. Caruso*, No. 09-10910, 2012 WL 909681, at *4 (Jan. 23, 2012). According to Paragraph D(7), the MDOC prohibits mail that is a "threat to the security, good order or discipline of the facility, may facilitate or encourage criminal activity or may interfere with the rehabilitation of the prisoner," including "[m]ail for the purpose of operating a business enterprise from within the facility." Paragraph MM(3) prevents prisoners from possessing mail that violates state or federal laws, such as "the filing of a false or fraudulent UCC financing statement in violation of MCL [§ ] 440.9501." MDOC Policy Directive 05.03.118, ¶ MM(3). The MDOC prisoner mail policy represents a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in fraudulent and illegal behavior. As a result, Plaintiff fails to state a First Amendment claim of free speech against Defendant White for the confiscation of his mail.

C. **First Amendment - Access to the Courts**

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds*, 430 U.S. at 821; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

### 1. **Defendant Trierweiler**

Plaintiff alleges that Defendant Trierweiler denied him his First Amendment right to access the courts by obstructing his grievances. A plaintiff's right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821-24. The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for the initiation of a civil rights action. Because Plaintiff may file a civil rights action without exhausting his available administrative remedies, he fails to allege actual injury. Plaintiff therefore fails to state a First Amendment access-to-the-courts claim against Defendant Trierweiler.

### 2. **Defendant Gerth**

After his misconduct conviction, Plaintiff states that Hearing Officer Gerth required all of Plaintiff's mail to be reviewed by her or her supervisor, and, thus, caused delays in Plaintiff's mail. Reading Plaintiff's complaint liberally, the Court construed this as an access-to-the-courts claim. For a First Amendment access-to-the-courts claim, Plaintiff must allege an actual injury to his direct appeals, a habeas corpus application or a civil rights claim. *See Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix*, 182 F.3d at 405. Plaintiff has wholly failed to allege that a delay in his mail has caused an actual injury to a non-frivolous legal claim. Accordingly, he fails to state an access-to-the-courts claim under the First Amendment against Defendant Gerth.

D. **Fourteenth Amendment - Grievances**

Plaintiff alleges that Defendant Trierweiler obstructed and denied his grievances in violation of his Fourteenth Amendment rights. Plaintiff, however, has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive him of due process. Moreover, Defendant Trierweiler may not be held liable under § 1983 merely because he denied Plaintiff's grievances. *See Shehee*, 199 F.3d at 300 (defendants could not be held liable for plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act).

E. **18 U.S.C. §§ 241 and 242**

Plaintiff claims that certain Defendants violated 18 U.S.C. §§ 241 and 242. Sections 241 and 242 are a part of the Criminal Code and only the United States as a prosecutor can bring a complaint pursuant to those sections. Those sections do not provide for a civil cause of action or civil remedies. *See Diamond v. Charles,* 476 U.S. 54, 64-65 (1986); *United States v. Friedland,* 83

F.3d 1531, 1539 (3d Cir. 1996); *Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir.1990); *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989); *Williams v. Luttrell,* 99 F. App'x 705, 707 (6th Cir. 2004); *Franklin v. Henderson,* 15 F. App'x. 205, 207 (6th Cir. 2001). Accordingly, Plaintiff fails to state a claim under 18 U.S.C. §§ 241 and 242.

      F.    **State Law**

Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants Gerth, Trierweiler and White violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim against Defendants Gerth, Trierweiler and White, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims against Defendants Gerth, Trierweiler and White will be dismissed without prejudice.

Defendants Gerth, Trierweiler and White's alleged failure to comply with an administrative rule or policy also does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

G. **Service**

At this juncture, Plaintiff's allegations warrant service of the remaining claims against Defendants Parsons, Rhodes, Pandya, Borgerding, Stieve, Corizon, Inc., and Westcomb.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Gerth, Trierweiler and White will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's claim under 18 U.S.C. §§ 241 and 242 for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the remaining claims against Defendants Parsons, Rhodes, Pandya, Borgerding, Stieve, Corizon, Inc., and Westcomb.

An Order consistent with this Opinion will be entered.

Dated: 10/1/2014            /s/ R. Allan Edgar
                            R. ALLAN EDGAR
                            UNITED STATES DISTRICT JUDGE