UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RICHARD CROWELL,

                Plaintiff,                Case No. 2:14-cv-44

v.                                          Honorable R. Allan Edgar

MICHELLE PARSONS et al.,

                Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint (docket #20) indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint (docket #20) for failure to state a claim against Defendants Gerth and Trierweiler. The Court will also dismiss Plaintiff's First Amendment free speech claim against Defendant White. The Court will serve the amended complaint on Defendants Parsons, Rhodes,

Pandya, Borgerding, Stieve, Corizon, Inc., and Westcomb. The Court will also serve Plaintiff's First Amendment retaliation claim on Defendant White.

## Discussion

### I.     Factual allegations

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility but complains of events that occurred at the G. Robert Cotton Correctional Facility (JCF) and the Alger Correctional Facility (LMF). In his *pro se* amended complaint, Plaintiff sues JCF Assistant Resident Unit Supervisor (ARUS) Michelle Parsons, JCF Dr. Karen Rhodes, Michigan Department of Corrections (MDOC) Regional Medical Officers (RMO(s)) Drs. Harish Pandya and William Borgerding, MDOC Chief Medical Officer (CMO) Dr. Jeffrey Stieve, Corizon, Inc., LMF Physician Assistant (PA) Amy Westcomb, LMF Grievance Coordinator W. Trierweiler, LMF ARUS Denise Gerth and LMF Mail Clerk Carol White.

Plaintiff states that he suffers from several medical ailments, including irritable bowel syndrome (IBS), gastroesophageal reflux disease (GERD), erosion of his esophagus, a hiatal hernia, sensory deprivations, spinal pain, a wool allergy and severe pain. For his ailments, the MDOC provided Plaintiff with special accommodations, including single cell housing, a bottom bunk detail, cotton blankets, gym shoes, a handicap table and permission not to work. In his amended complaint, Plaintiff lists his allegations by Defendant, as follows:

<u>Defendant Parsons</u>: Plaintiff arrived at JCF on June 21, 2012. Soon thereafter, Defendant Parsons placed Plaintiff at a high security level "due to [Plaintiff's] disabilit[ies.]" (Attach. to. 2nd Am. Compl., docket #20, Page ID#101.) On November 27, 2012, Plaintiff filed grievances and civil rights complaints against Parsons, in part, due to his placement at the higher

security level. On November 30, 2012, Plaintiff states that Parsons conspired with Dr. Rhodes to remove his special medical accommodations in retaliation for filing complaints against Parsons. As a result, Plaintiff was placed in segregation and endured pain, sensory deprivation, itching, anger, hostility and confusion. Plaintiff complains that Defendant Parsons deprived him of his First and Eighth Amendment rights.

Defendant Rhodes: On July 6, 2012, Plaintiff states that Dr. Rhodes approved all of Plaintiff's special accommodations, including a single cell, bottom bunk, cotton blankets, gym shoes, handicap table, and "no work." (2nd Am. Compl., docket #20, Page ID#90.) After Plaintiff filed grievances and complaints against Defendant Parsons, however, Plaintiff claims that Dr. Rhodes canceled all of his special accommodations. As a result, Plaintiff alleges that he suffers pain, rage, anger and confusion. Plaintiff states that Dr. Rhodes violated his First and Eighth Amendment rights and MDOC policy.

Defendant Pandya: Plaintiff alleges that RMO Dr. Pandya approved Plaintiff's special accommodations even when they had been denied by health care at Parnell Correctional Facility. Plaintiff alleges that after Dr. Rhodes revoked all of Plaintiff's special accommodations on November 30, 2012, Dr. Pandya refused to reinstate any of Plaintiff's special accommodations. Reading Plaintiff's complaint liberally, Plaintiff alleges that Dr. Pandya violated his Eighth Amendment rights by failing to provide for his special accommodations. *See Haines*, 404 U.S. at 520.

Defendant Stieve: As MDOC CMO, Plaintiff states that Dr. Stieve runs the Pain Management Committee (PMC), which overseas all chronic pain medications. On April 3, 2013, Dr. Stieve canceled the pain medication regimen that Plaintiff had been on since 2004, except for

a short period in 2009. Plaintiff alleges that Dr. Stieve canceled his pain medication in 2009 but reinstated it after Plaintiff's doctor appealed his decision. When his pain medication was ultimately canceled on April 3, 2013, Plaintiff claims that Dr. Stieve failed to replace his medication with any comparable pain medication. Because of Dr. Stieve's refusal to provide Plaintiff with pain medication, Plaintiff alleges that he suffers from intense spinal, GERD and IBS pain, as well as anger and rage. Plaintiff asserts that Dr. Stieve violated his Eighth Amendment rights.

Defendant Borgerding: In 2007, Plaintiff states that he received permanent approval for Nexium.[1] In 2011, Plaintiff's Nexium prescription was canceled allegedly due to its cost. From 2011 to 2014, Plaintiff complains of esophagus erosion, bleeding, discomfort and pain. In 2013, despite several requests, Dr. Borgerding repeatedly denied Nexium for Plaintiff. Plaintiff states that his GERD is complicated by a hiatal hernia and could lead to death if untreated. Plaintiff complains that Dr. Borgerding's deliberate indifference to his medical issues have caused pain, confusion, anger and rage. As a result, Plaintiff states that Dr. Borgerding violated his Eighth Amendment rights.

Defendant Corizon, Inc.: Plaintiff states that Corizon was deliberately indifferent to Plaintiff's serious medical needs and failed to properly train its employees in violation of his Eighth Amendment rights. Accordingly, Plaintiff suffers from severe pain, anger, rage, hostility, behavior disorders and sensory deprivations.

Defendant Westcomb: As his medical provider at LMF from March 13 to October 9, 2013, Plaintiff claims that PA Westcomb refused to treat Plaintiff for his pain, GERD, wool allergy and IBS, and withheld his continuous positive airway pressure (CPAP) machine for three

---

[1] Nexium is a drug used to treat the symptoms of GERD. *See* http://www.drugs.com/nexium.html (accessed on Sept. 10, 2014).

days.  Plaintiff also provides that Westcomb falsified information in Plaintiff's records, which violated criminal statutes.  Plaintiff further states that Defendant Westcomb violated his Eighth Amendment rights.

<u>Defendant Trierweiler</u>: Plaintiff alleges that between March 13 and October 9, 2013, LMF Grievance Coordinator Trierweiler "consistently engaged in obstuctionistic, repressive tactics to deny Plaintiff['s] 1st Amend U.S. Const. Right to Redress." (2nd Am. Compl., docket #20, Page ID#93.)  Plaintiff alleges that by interfering with his grievances, Defendant Trierweiler violated his First Amendment right to access the courts and his due process rights.

<u>Defendant White</u>:  Plaintiff alleges that Mail Clerk White unlawfully rejected Plaintiff's mail for being Uniform Commercial Code (UCC) material on June 19, 2013.  Plaintiff states that he merely attempted to mail an "oath of fidelity" lien against a corrections officer.  (2nd Am. Compl., Page ID#93.)  Plaintiff states that the rejected mail did not contain any UCC terminology.  Plaintiff complains that White was essentially protecting the officer by rejecting Plaintiff's mail.   Moreover, when Plaintiff inquired with White as to why she rejected his mail, Plaintiff alleges that White retaliated against him by giving him a misconduct ticket in violation of his First Amendment rights.  Plaintiff also appears to allege that White retaliated against him by restricting his mail.  Further, Plaintiff suggests that White violated his First Amendment right to communication by restricting his mail.

<u>Defendant Gerth</u>: On June 21, 2013, Plaintiff states that ARUS Gerth held an administrative hearing regarding the mail that was rejected by Mail Clerk White.  In the hearing report, Plaintiff asserts that Gerth acknowledged that the rejected material was not UCC material.  However, Gerth still upheld the rejection and refused to return the mail to Plaintiff.  Also, on June

21, 2013, Gerth posted a note on Plaintiff's door that Plaintiff could only mail items through Gerth or Gerth's supervisor. Plaintiff states that this restriction continued for four months causing mail delays. Plaintiff contends that Gerth retaliated against him by restricting his mail for engaging in protected conduct, "to wit redress." (2nd Am. Compl., Page ID#93.) The Court also liberally construes a due process claim against Gerth for rejecting Plaintiff's mail and a First Amendment access-to-the-courts claim for his mail delays. *See Haines*, 404 U.S. at 520.

For relief, Plaintiff requests injunctive relief and compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oiver*, 510 U.S. 266, 271 (1994).

### A. First Amendment - Retaliation

In violation of his First Amendment rights, Plaintiff alleges that (1) Defendant Gerth retaliated against him by restricting his mail because he sought redress for his complaints; (2) Defendant White retaliated against him by giving him a misconduct ticket when Plaintiff asked White why he confiscated his mail; and (3) Defendants Rhodes and Parsons removed Plaintiff's special medical accommodations in retaliation for Plaintiff filing complaints against Parsons.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith*

*v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of grievances is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999).

### 1. **Defendant Gerth**

Plaintiff contends that Defendant Gerth retaliated against him by restricting his mail because he sought redress for his complaints. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff's retaliation claim against Defendant Gerth is wholly conclusory. Plaintiff has not alleged any connection between his mail restriction and his grievances. Moreover, Defendant Gerth had a valid reason for the mail restriction. After upholding the rejection of Plaintiff's mail by Defendant White, Defendant Gerth most likely imposed the restriction to make sure that Plaintiff was not filing fraudulent liens against MDOC personnel. Accordingly, Plaintiff's

speculative allegation fails to state a First Amendment retaliation claim against Defendant Gerth. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 2. **Defendants White, Rhodes and Parsons**

At this stage of Plaintiff's action, the Court finds that Plaintiff's allegations against Defendants White, Rhodes and Parsons are sufficient to state First Amendment retaliation claims.

### B. First Amendment - Free Speech and Communication

Reading Plaintiff's complaint liberally under *Haines*, 404 U.S. at 520, Plaintiff alleges that the confiscation of his mail as UCC material by Defendant White violated his First Amendment right to free speech and communication. Plaintiff claims that he only intended to file an "oath of fidelity" lien against a corrections officer. (2nd Am. Compl., docket #20, Page ID#93.) It is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). The courts routinely have recognized that prisoners and their correspondents have a First Amendment interest in communication. *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (construing prior, broader version of MDOC Policy Directive 05.03.118, ¶ HH(23) (effective Jan. 1, 2006) as unconstitutionally vague) (citing *Procunier v. Martinez*, 416 U.S. 396, 417 (1974)). Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85. Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in

[the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547). When reviewing an inmate's claim of a constitutional violation, courts must balance this policy of judicial restraint with the need to protect the inmate's constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See Rector v. Caruso*, No. 1:10-cv-904, 2011 WL 446149, at *5 (W.D. Mich. 2011) (citing cases). It is also well-established that safety and internal security are legitimate penological goals for prison administrators. *Id.* at *6. The MDOC can confiscate UCC materials under the rules in MDOC Policy Directive 05.03.118 (effective Sept. 14, 2009). *See Johnson v. Caruso*, No. 09-10910, 2012 WL 909681, at *4 (E.D. Mich. Jan. 23, 2012). According to MDOC Policy Directive 05.03.118, ¶ D(7), the MDOC prohibits mail that is a "threat to the security, good order or discipline of the facility, may facilitate or encourage criminal activity or may interfere with the rehabilitation of the prisoner," including "[m]ail for the purpose of operating a business enterprise from within the facility." Paragraph MM(3) prevents prisoners from possessing mail that violates state or federal laws, such as "the filing of a false or fraudulent UCC financing statement in violation of MCL [§ ] 440.9501." MDOC Policy Directive 05.03.118, ¶ MM(3). The MDOC prisoner mail policy

represents a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in fraudulent and illegal behavior.

Plaintiff attempted to mail an "oath of fidelity" lien against a corrections officer, however, Mail Clerk White rejected the lien as UCC material. At his hearing, Plaintiff alleges that ARUS Gerth did not find the material to be UCC material, but still rejected the mail. Plaintiff does not state why ARUS Gerth rejected his mail nor did Plaintiff attach the hearing report to his complaint. Nevertheless, the confiscation of Plaintiff's lien by Mail Clerk White was appropriate. Certainly, filing fraudulent liens against corrections officer can threaten the security, good order or discipline of the facility. *See* MDOC Policy Directive 05.03.118, ¶ D(7). As a result, Plaintiff fails to state a First Amendment communication claim against Defendant White for the confiscation of his mail.

### C. First Amendment - Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

1. **Defendant Trierweiler**

Plaintiff alleges that Defendant Trierweiler denied his First Amendment right to access the courts by obstructing his grievances. A plaintiff's right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821-24. The exhaustion requirement for prisoner actions only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for the initiation of a civil rights action. Because Plaintiff may bring a civil rights action

without exhausting his available administrative remedies, he fails to allege actual injury. Plaintiff therefore fails to state a First Amendment access-to-the-courts claim against Defendant Trierweiler.

### 2. **Defendant Gerth**

Plaintiff states that Defendant Gerth required all of Plaintiff's mail to be reviewed by Gerth or Gerth's supervisor, which caused delays in the sending or receiving of Plaintiff's mail. Plaintiff, however, fails to allege that a delay in his mail caused an actual injury to a non-frivolous claim in his direct appeals, a habeas corpus application or a civil rights claim. *See Thaddeus-X*, 175 F.3d at 391; *Lewis*, 518 U.S. at 353; *accord Hadix*, 182 F.3d at 405. Accordingly, Plaintiff fails to state an access-to-the-courts claim under the First Amendment against Defendant Gerth.

### D. **Due Process - Hearing on Rejected Mail**

Plaintiff alleges that Defendant Gerth violated his due process rights by finding his rejected mail was not UCC material but still upholding Mail Clerk White's decision to reject the mail. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim") (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that

deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

It is true that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401 (1989). In determining what process is due to an inmate facing a loss of liberty, the Court applies the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), requiring consideration of three distinct factors: (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of such interest through procedures used, and probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and fiscal and administrative burdens that additional or substitute procedural requirements would entail. *See Wilkinson*, 545 U.S. at 224-25. In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (1) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (2) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (3) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. In *Wilkinson*, in contrast, the Supreme Court held that, when the liberty interest involved merely affects the conditions under which a prisoner is housed, the due process to which an inmate is entitled is less than the process established in *Wolff*, and does not require that the inmate be given the opportunity to call witnesses. *Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005).

Plaintiff, however, fails to allege any deprivation of necessary process. Plaintiff admits that he received a notice of intent to reject his mail. Defendant Gerth held an administrative hearing on Plaintiff's rejected mail and issued a written decision. Plaintiff therefore received all of the process that he was due. Although Plaintiff does not agree with the outcome, the Due Process Clause does not ensure that an individual obtains a particular outcome. *See Robbles v. Dennison*, 745 F. Supp. 2d 244, 274-74 (W.D.N.Y. 2010) ("[a]ll the Constitution require[s] [is] certain procedures - not a particular outcome as a result of the process") (citation omitted).

Finally, Plaintiff has no substantive due process interest in his incoming mail. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, the First Amendment provides the source for constitutional protection. Accordingly, Plaintiff fails to state a substantive due process claim based on the rejection of his mail.[2]

### E. Due Process - Grievances

Plaintiff alleges that Defendant Trierweiler obstructed and denied his grievances in violation of his Fourteenth Amendment due process rights. Plaintiff, however, has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427,

---

[2]Plaintiff's First Amendment free speech and communication claim against Defendant Gerth is discussed *supra*.

430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive him of due process. Moreover, Defendant Trierweiler may not be held liable under § 1983 merely because he denied Plaintiff's grievances. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (defendants could not be held liable for plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act). Because Plaintiff has no liberty interest in the grievance process, Defendant Trierweiler's conduct did not deprive him of due process.

### F. Service

At this juncture, Plaintiff's allegations warrant service of Plaintiff's Eighth Amendment claims against Defendants Parsons, Rhodes, Pandya, Borgerding, Stieve, Corizon, Inc., and Westcomb. The Court also finds that Plaintiff's First Amendment retaliation claims against Defendants White, Rhodes and Parsons should be served.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Gerth and Trierweiler will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also

dismiss Plaintiff's First Amendment free speech claim against Defendant White for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(28) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's Eighth Amendment claims on Defendants Parsons, Rhodes, Pandya, Borgerding, Stieve, Corizon, Inc., and Westcomb. The Court will also serve Plaintiff's First Amendment retaliation claims on Defendants Parsons, Rhodes and White.

    An Order consistent with this Opinion will be entered.


Dated: 10/14/2014                    /s/ R. Allan Edgar
                                                R. ALLAN EDGAR
                                                UNITED STATES DISTRICT JUDGE