UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD K. CROWELL,

                    Plaintiff,                    Case No. 2:14-CV-44
v.                                                Honorable R. Allan Edgar

MICHELLE PARSONS, et al.,

                    Defendants.

_____/

## OPINION AND ORDER

Plaintiff Richard Crowell, an inmate currently confined by the Michigan

Department of Corrections (MDOC), filed this *pro se* civil rights action pursuant to  42 U.S.C. §

1983 alleging violations of his constitutional rights. ECF No. 1, 20.  Plaintiff's sues the following

Defendants: Assistant Resident Unit Manager (ARUM) Michelle Parsons, Dr. Karen Rhodes;

Regional Medical Officer Harish Pandya, Chief Medical Officer Jeffrey Stieve, Regional

Medical Officer William Borgerding, Medical Provider Corizon Inc., Physician Assistant (PA)

Amy Westcomb, and Mail Clerk Carol White. ECF No. 20; PageID.88-89. Plaintiff is seeking

declaratory relief and punitive damages.

Plaintiff filed an amended complaint on July 18, 2014, alleging the following

claims against Defendants:

> I. That Defendants Parsons[, Rhodes] . . . and White capriciously
> violated Plaintiff's 1st Amendment right to redress and court access
> by retaliating against Plaintiff and engaging in obstructionistic actions
> while Plaintiff was involved in protected conduct.

> II. That Defendants Parsons, Rhodes, Pandya, Stieve, Borgerding,
> [Corizon, Inc.,] and Westcomb have all satisfied both the subjective
> and objective components of an 8th Amendment claim. All have
> acted with flagrant deliberate indifference to Plaintiff . . . documented

> service health care needs and that instant claim does not involve a
> "difference" of opinions as to treatment but rather what Plaintiff
> <u>needs</u> backed up by mountain of documents.

PageID.90, 92, 94.  Defendants Corizon Health, Inc., Westcomb, and Rhodes filed a motion for

summary judgment on November 16, 2015. ECF No. 108.  Plaintiff filed a response in

opposition on January 21, 2016. ECF No. 132.  Defendants Corizon, Westcomb, and Rhodes

filed a reply to Plaintiff's response in opposition on February 4, 2016. ECF No. 140.  Similarly,

Defendants White, Parsons, Pandya, Borgerding, and Stieve filed a motion for summary

judgment on December 16, 2015, raising qualified immunity.  ECF No. 112.  Plaintiff filed a

response on January 4, 2016 (ECF No. 118), and another on February 11, 2016 (ECF No. 142).

The motions for summary judgment are now ready for review.

      The following are the events in question viewed in the light most favorable to

Plaintiff. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31

F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a

summary judgment motion are accepted as true)). Plaintiff indicates that he suffers from several

medical problems, including irritable bowl syndrome (IBS), gastroesophageal reflux disease

(GERD), erosion of his esophagus, a hiatal hernia, sensory deprivations, spinal pain, a wool

allergy, and severe pain.  He states that the MDOC, for a while, afforded him special health

accommodations for these medical issues, such as: a single cell, a bottom bunk, cotton blankets,

gym shoes, a handicapped table, and no work. PageID.90.

      Plaintiff arrived at Jackson Correctional facility on June 21, 2012.  PageID.101,

Soon thereafter, Plaintiff developed a confrontational relationship with Defendant Parsons.

PageID.101. On November 27, 2012, Plaintiff filed three grievances and civil service complaints

on Defendant Parsons, in part, due to Defendant Parsons placing Plaintiff in a higher security level. PageID.90, 101.  On November 30, 2012, Defendant retaliated against Plaintiff by contacting and convincing health services to "strip[] him of numerous special accommodation notices," despite his aforementioned health impairments. PageID.90, 101.

On November 30, 2012, Plaintiff claims that Defendant Rhodes was the medical professional that canceled his special accommodations, and that she did so to retaliate against Plaintiff. PageID.90. Plaintiff claims that this was an act of retaliation because Defendant Rhodes had approved these special accommodations only a few months earlier (on July 6, 2012). PageID.90, 102.

After these cancellations were made, Plaintiff contacted Defendant Pandya because Defendant Pandya had reissued some of Plaintiff's special accommodation requests in the past.  PageID.90, 103.  However, Defendant Pandya refused to act or reinstate Plaintiff's recently terminated accommodations.  PageID.90, 103.

On April 2, 2013, Defendant Borgerding denied Plaintiff's request for Nexium (a drug used to treat GERD symptoms). PageID.91; *see* http://www.drugs.com/nexium.html (accessed on May 16, 2016).  Notably, Plaintiff was originally prescribed Nexium in 2005, but this prescription was cancelled due to cost in 2011.  PageID.91-92.  Plaintiff claims that, despite his requests for Nexium, Defendant Borgerding has continued to deny this drug to Plaintiff, which has caused Plaintiff pain.  PageID.91.

On April 3, 2012, Plaintiff claims that Defendant Stieve, who runs the Pain Management Committee (PMC) that oversees chronic pain medications, improperly cancelled Plaintiff's pain medication regimen that Plaintiff had been on since 2004 (except for a short

period during 2009). PageID.91, 103-104.  Plaintiff claims that Defendant Stieve has not placed

Plaintiff on any comparable treatment, which has left Plaintiff in pain.  PageID.91.

   In addition, from March 13 through October 9, 2013, Defendant Westcomb (who

was Plaintiff's medical service provider during that time) refused to treat Plaintiff for "well

documented serious medical needs" despite Plaintiff's request for help. PageID.92.  Plaintiff also

states that Defendant Westcomb deprived Plaintiff of a "c-papp machine for 3 days," which

allegedly put Plaintiff's life in danger. PageID.92. Plaintiff alleges that Defendant Westcomb

falsified information in his medical charts as well. PageID.105.

   On June 19, 2013, Plaintiff claims that Defendant White improperly rejected

Plaintiff's mail due to it being Uniform Commercial Code (UCC) material. PageID.93, 106.

Plaintiff claims that he simply tried to mail an "oath of fidelity" lien against a corrections officer.

PageID.93, 105.  Plaintiff claims that the UCC was not mentioned in the piece of mail, and that

Defendant White was protecting the corrections officer by not mailing the document. PageID.93,

105. Moreover, Plaintiff states that when he asked Defendant White to explain her reasons for

intercepting his mail, Defendant White retaliated against Plaintiff by issuing him a misconduct

ticket. PageID.105.

   Moreover, Plaintiff claims that Defendant Corizon Health, Inc. failed to train the

medical staff that work for the MDOC.  PageID.92, 105.  This failure to train, and Defendant

Corizon's alleged deliberate indifference to this failure, has caused Plaintiff physical and

emotional pain.  PageID.92, 105.

   Based on these occurrences, Plaintiff asserts that Defendants violated his

constitutional rights. ECF No. 20.  Plaintiff seeks legal redress before this Court for these alleged

violations.

I.

Presently before the Court are Defendants' motions for summary judgment, pursuant to Fed. R. Civ. P. 56.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad***,** 379 F.3d at 416 (*citing Adams*, 31 F.3d at 382).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Notably, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court could not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252; *see also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single

-5-

affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

II.

Plaintiff claims that Defendants violated his First Amendment right to be free from retaliation, and his Eighth Amendment right to be free from deliberate indifference to his medical needs. ECF No. 20.  Each claim will be evaluated individually.

### A. First Amendment Claims

Plaintiff's first group of claims alleges violations of his First Amendment rights. Specifically, he alleges that Defendants Parsons and Rhodes violated his right to be free from retaliation, and that Defendant White violated his right to communicate through the mail.

In general, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Notably, the filing of grievances is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999).

    *i. Defendant Parsons*

Plaintiff claims that Defendant Parsons aided in cancelling his special health accommodations in retaliation for Plaintiff writing grievances against her.  PageID.90, 101. With regard to the first retaliation element, Plaintiff has demonstrated that he engaged in constitutionally-protected conduct. This is because Plaintiff alleges that he filed grievances against Defendant Parsons, and filing grievances is constitutionally-protected conduct.  *Shehee*, 199 F.3d at 300-01.

    Similarly, Plaintiff has shown that an adverse action was taken against him that would deter an ordinary person from filing grievances in the future, thereby fulfilling the second element of his retaliation claim. PageID.1629-1630. Plaintiff claims that the adverse action that Defendant Parsons took was calling the health center and convincing someone to terminate his special health accommodations.  The Court agrees with Plaintiff in that terminating a person's special health accommodations could deter a person of ordinary firmness from filing grievances. As such, Plaintiff has satisfied the second element of his retaliation claim.

    However, upon analyzing the third element of Plaintiff's retaliation claim, it is clear that Plaintiff has not demonstrated that there is a causal connection between the adverse action and the protected conduct.  Here, Plaintiff claims that he filed grievances against Defendant Parsons on November 27, 2012, and then three days later, Defendant Parsons called the health unit and convinced someone to cancel all of Plaintiff's special accommodations. PageID.101.  While temporal proximity, at times, *may* be sufficient to constitute indirect evidence of a causal connection in retaliation claim, it is not in this case. *See Muhammad*, 379 F.3d at 417-18; *Brandon v. Bergh*, No. 2:08-CV-152, 2010 WL 188731, at *1 (W.D. Mich. Jan.

16, 2010).  A defendant's statements or conduct are not evidence of retaliation where, as here, the defendant is not the decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038 (noting plaintiff's retaliation claim failed because defendant was not the person that ultimately decided that plaintiff should be transferred); *Shehee*, 199 F.3d at 301 (noting that despite the prisoner's allegation that the prison employee instigated the loss of his commissary position, the prison employee could not be liable for retaliation since the employee was not involved in the decision to terminate the prisoner).  Here, Plaintiff claims that Defendant Parsons had to call someone in the health unit and convince this person to terminate Plaintiff's special accommodations, which shows that Defendant Parsons did not have the ability to terminate Plaintiff's accommodations on her own. As a result, Plaintiff's claim for retaliation against Defendant Parsons fails.

> ii. *Defendant Rhodes*

Plaintiff's next retaliation claim states that Defendant Rhodes retaliated against Plaintiff when she terminated Plaintiff's special accommodations upon Defendant Parsons' request on November 30, 2012. PageID.101-102. Again, with regard to the first element of his retaliation claim, Plaintiff has established that he engaged in protected conduct (filing grievances against Defendant Parsons). *See Shehee*, 199 F.3d at 300-01. In addition, Plaintiff has established that losing or terminating special health accommodations is an adverse action that could deter a person of ordinary firmness from filing grievances.

However, with regard to the third retaliation element, Plaintiff has not demonstrated a causal connection between Defendant Rhodes' "adverse action" and Plaintiff's grievance filing.  The record shows that on November 30, 2012, Defendant Rhodes did, in fact,

receive a call from a guard asking to verify Plaintiff's special accommodations, but it does not

show that Defendant Rhodes actually terminated any of Plaintiff's accommodations that day.

*See, e.g.,* PageID.1242; 1451-1453 (Plaintiff's Special Accommodations Orders as of 9/26/2012)

(noting that *PA Neff* removed Plaintiff's single cell accommodation since he did not qualify for it

anymore, as it is for people with gender identity disorder or paraplegic patients); PageID.1476

(noting that Defendant Rhodes terminated Plaintiff's handicapped table in *July of 2012*, and

terminated his "lock no higher than 2nd level" in *January of 2013*).   The records do not show

that Defendant Rhodes was involved in the termination of the following accommodations, as

Plaintiff alleges: cotton blankets, gym shoes, bottom bunk, and no work. PageID.1244, 1248.

Based on this evidence, it is clear that Defendant Rhodes did not terminate any of Plaintiff's

special accommodations on November 30, 2012, as Plaintiff claims. Therefore, Plaintiff has

failed to establish a causal connection between his grievance filing practices and the termination

of his special accommodations, which means Plaintiff's claim against Defendant Rhodes fails.

### iii. Defendant White

Plaintiff's final First Amendment retaliation claim is against Defendant White.

Plaintiff claims that Defendant White improperly deprived Plaintiff of a piece of mail (due to it

being UCC material) in violation of his First Amendment rights, and then subsequently retaliated

against Plaintiff by issuing him a misconduct ticket. PageID.93, 106-107.

In determining whether a prisoner has a constitutionally-protected right to receive

mail under the first retaliation prong, the Court must follow the standard set forth in *Turner v.

Safley*, 482 U.S. 78 (1987).  The *Turner* standard indicates that a "prisoner's right to receive mail

is subject to prison policies and regulations that are 'reasonably related to legitimate penological

interests . . . such as, security, good order, or discipline of the institution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (quoting *Turner*, 482 U.S. at 89; *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989)). In addition, the *Turner* Court outlined four factors that should be used in determining "whether a prison's restriction on incoming publications was reasonably related to legitimate penological interests":

> (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.

*Id.* (quoting *Cornwell v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992) (citing *Turner*, 482 U.S. at 89)). The courts need not "weigh evenly, or even consider explicitly," each of the four factors. *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999). In general, courts greatly defer to prison policies, practices, and regulations as they relate to the preservation of these interests. *Harbin-Bey*, 420 F.3d at 578 (citing *Thornburgh*, 490 U.S. at 407-08).

Notably, the courts recognize "[t]he abusive practices of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved in securing the prisoner's incarceration)." *Rector v. Caruso*, No. 1:10-CV-904, 2011 WL 446149, at *5 (W.D. Mich. Feb. 3, 2011) (collecting cases). "The MDOC most certainly has a legitimate penological purpose in preventing such behavior. It is well established that safety and internal security are legitimate goals for prison administrators." *Rector*, 2011 WL 446149, at *6 (citing Supreme Court cases).

Here, the regulation in question is MDOC Policy Directive 05.03.118(D), which

-10-

states that:

> [M]ail shall be prohibited if it is a threat to the security, good order,
> or discipline of the facility, may facilitate or encourage criminal
> activity, or may interfere with the rehabilitation of the prisoner.

PageID.1666 (quoting MDOC PD 05.08.118(D)). Subsection (MM)(3) further adds that
prisoners may not possess mail that violates state and federal law, such as "the filing of a false or
fraudulent UCC financing statement in violation of MCL 4490.9501." PageID.1672 (quoting
MDOC PD 05.08.118(MM)(3)). In addition, section (MM)(11) states that prisoners may not
possess "[m]ail encouraging or providing instruction in the commission of a criminal activity,"
which includes "the filing of a false or fraudulent UCC lien." PageID.1673 (quoting MDOC PD
05.08.118(MM)(11)). This MDOC Policy Directive pertaining to prisoner mail represents a
rational means by which the facility can achieve the ultimate goal of preventing prisoners from
engaging in fraud or illegal behavior against staff. *Rector*, 2011 WL 446149, at *6. As a result,
the Court concludes that there is a "valid, rational connection between the prison policy and the
legitimate governmental interest asserted to justify it." *Harbin-Bey*, 420 F.3d at 578 (citations
omitted). As a result, Defendant White did not improperly confiscate Plaintiff's mail in violation
of Plaintiff's First Amendment rights since the MDOC regulation serves a legitimate
governmental interest. *See Turner*, 482 U.S. at 89.

      Moreover, to the extent that Plaintiff claims his mail did not include UCC or lien
information in it, this assertion also fails. The misconduct ticket (and subsequent hearing report)
that Defendant White issued against Plaintiff on June 20, 2013, clearly states that Plaintiff was
found guilty of attempting to file a lien on prison staff in violation of the abovementioned
MDOC Policy Directive. PageID.1678 (Misconduct Report). As a result, Plaintiff's claim that

this mail did not fall within the MDOC Policy Directive pertaining to prison mail fails.

To the extent that Plaintiff claims Defendant White retaliated against him by filing a misconduct ticket against him, this claim also fails. When a plaintiff is ultimately found guilty of the misconduct charge, the plaintiff cannot state a claim for retaliation arising from the misconduct charges. *See Jackson v. Madery*, 158 Fed. App'x 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.")); *see also Briggs v. Burke*, No. 1:13-CV-1160, 2015 WL 5714520, at *1 (W.D. Mich. Sept. 29, 2015); *Thompson v. Moran*, No. 1:13-CV-499, 2015 WL 753149, at **1, 4 (W.D. Mich. Feb. 23, 2015) ("Where a prisoner alleges that prison personnel retaliated against him by filing a false misconduct violation, [a] finding of guilt based upon some evidence of a violation of prison rules essentially checkmates [a] retaliation claim.") (citations and quotations omitted).

Here, as previously mentioned, Defendant White filed a misconduct ticket against Plaintiff on June 20, 2013, for attempting to file a lien on prison staff.  PageID.1678 (Misconduct Report).  However, after a hearing, Plaintiff was found guilty of the misconduct issued by Defendant White. PageID.1680 (Misconduct Hearing Report). As a result, Plaintiff's claim for retaliation arising from this misconduct ticket fails, as Plaintiff was found guilty of the misconduct.

### B. Eighth Amendment Claims

Plaintiff's next group of claims alleges deliberate indifference under the Eighth Amendment.  Plaintiff's Eighth Amendment claims are against Defendants Parsons, Rhodes, Pandya, Borgerding, Stieve, Westcomb, and Corizon Health, Inc.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment's protections are limited to "deprivations of essential food, medical care, or sanitation [or] other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  For a prisoner to prevail on an Eighth Amendment claim, the prisoner must exemplify that "he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Evans v. Capello*, No. 2:12-CV-135, 2012 WL 1611227, at *4 (W.D. Mich. May 8, 2012) (quoting *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010)).   The Eighth Amendment obligates prison authorities to provide medical care to incarcerated people, and a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) ("Where the seriousness of a prisoner's need[] for medical care is obvious even to a lay

person.")*. If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical Malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison

-14-

medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

*i. Defendants Parsons and Rhodes*

Plaintiff claims that Defendant Parsons acted with deliberate indifference when she called the health unit and convinced someone (likely Defendant Rhodes) to remove all of his special health accommodations, such as: single cell, bottom bunk, cotton blankets, gym shoes, handicapped table, and no work accommodations. PageID.90. In addition, Plaintiff claims that Defendant Rhodes acted with deliberate indifference to Plaintiff's medical needs when she terminated all of Plaintiff's special health accommodations on November 30, 2012. PageID.90.

Assuming Plaintiff has established the objective component of his deliberate indifference claim (that his medical issues are sufficiently serious), he has not satisfied the subjective component (that Defendants had a "sufficiently culpable state of mind" when denying him medical care). For example, while Defendant claims that he lost all of his special accommodations on November 30, 2012, after Defendant Parsons phoned the health unit (which led to Defendant Rhodes terminating his accommodations), the objective medical records patently refute Plaintiff's allegations. *See* PageID.1476 (Special Accommodations Order dated 11/30/2012) (stating Plaintiff still had special accommodations of CPAP with tubing mask, glasses, twenty-four hour power as of November 30, 2012; and that his handicapped table and "lock no higher than 2nd level" accommodations were terminated in *July and January* of 2013,

-15-

respectively); *see also* PageID.1452 (PA Neff Report dated 9/26/2012) (stating that *PA Neff* removed Plaintiff's single cell accommodation in September of 2012 because he does not meet the MSAC criteria for it anymore). Based on this evidence, it is clear that Plaintiff's accommodations were: (1) either removed long before or after the alleged November 30th phone call, and (2) that not a single one of Plaintiff's health accommodations were removed on November 30, 2012, as Plaintiff alleges. As a result, Plaintiff has failed to show that Defendants acted with deliberate indifference to his medical needs on November 30, 2102, which means Plaintiff's Eighth Amendment claims against Defendants Parsons and Rhodes fail.

ii. *Defendant Pandya*

Plaintiff claims that Defendant Pandya was deliberately indifferent to his medical needs when Defendant Pandya did not re-instate any of Plaintiff's special health accommodations after November 30, 2012. PageID.90.  Notably, according to the medical evidence provided, the only special accommodations that Defendant Pandya was asked to re-evaluate after November 30, 2012, is Plaintiff's single cell accommodation. PageID.1493-1494 (MDOC Health Care Report dated 12/6/2012) (noting Dr. Rhodes contacted Defendant Pandya "regarding his prior auth[orization] of single cell [room] detail" because Plaintiff claims Defendant Pandya previously gave him permanent single cell authorization).

With regard to the single cell accommodation that Defendant Pandya reviewed for Plaintiff after November 30, 2012, Plaintiff has not satisfied the objective component of his deliberate indifference claim—that Plaintiff had a serious medical need for this special accommodation.  Plaintiff indicated that he was originally afforded a single cell accommodation in 2002 by Dr. Patton for his sleep apnea and restless leg syndrome (PageID.1498); however,

-16-

these health conditions did not meet the MSAC criteria for being given a single cell as of 2012. PageID.1477 (Medica Report dated 11/30/2012) (indicating that the MSAC criteria for single cell accommodation are: gender identity, paraplegic with colostomy and/or ureterostomy causing sanitation issues, wheelchair bound, and certain psychological issues determined by mental health). Moreover, despite Plaintiff's allegations to the contrary, Defendant Pandya denied giving Plaintiff permanent single cell accommodation (because no accommodation is permanent). PageID.1498. Since Plaintiff has not demonstrated that he suffered from a serious medical condition requiring single cell accommodation (as required under the objective component of his deliberate indifference claim), Plaintiff has failed to show that Defendant Pandya was deliberately indifferent to Plaintiff's medical needs. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Pandya is denied.

### iii. Defendant Borgerding

Plaintiff's next claim is that Defendant Borgerding was deliberately indifferent to Plaintiff's medical needs when Defendant cancelled Plaintiff's Nexium prescription in 2013, despite Plaintiff's several requests to remain on this drug. PageID.104. Plaintiff claims that his GERD, which is complicated by his hiatal hernia, was completely controlled by Nexium. PageID.92, 104-105. Now that he is off of Nexium, he claims that his GERD and hiatal hernia could kill him if they remain untreated. PageID.92, 104-105.

Assuming Plaintiff has established that GERD and a hiatal hernia are serious medical conditions, Plaintiff must still demonstrate that Defendant had a sufficiently culpable state of mind when terminating Plaintiff's Nexium prescription (as required to satisfy the subjective component of his deliberate indifference claim). In evaluating this subjective prong, it

-17-

is important to note that differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at154-55; *Ward*, 1996 WL 627724, at *1. This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart*, 1997 WL 160322, at *2.

   Here, it is clear that Plaintiff simply disagrees with Defendant Borgerding's medical opinion to end Plaintiff's Nexium prescription. For example, the record shows that when Defendant Borgerding took Plaintiff off of Nexium, he placed Plaintiff on Protonix (another, similar, "proton-pump inhibitor"), which is a drug that acts the same as Nexium "by reducing the amount of acid in the stomach." PageID.1661. Part of his decision to take Plaintiff off of Nexium was based on the fact that Nexium "is prescribed for acid reflux for no more than 4 weeks, then possibly an additional 4 weeks," and that Nexium "is not mean to be prescribed long-term in the manner that the plaintiff is asking." PageID.1662. Moreover, Defendant Borgerding noted that Plaintiff's GERD and hiatal hernia will not lead to death, and that these conditions can often be treated with over-the-counter antacids (such as Tums). PageID.1661. Based on this information, it is clear that Plaintiff simply does not agree with the medical course of action taken by Defendant Borgerding. As such, Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference against Defendant Borgerding.

   *iv. Defendant Stieve*

   Next, Plaintiff claims that on April 3, 2012, Defendant Stieve was deliberately indifferent to Plaintiff's medical needs when he "cancelled a pain medication regimen plaintiff had been on since 2004," that "over 15 doctors, physician assistants and nurse practitioners

between 2004 and 2013 . . . believed . . . was adequate treatment." PageID.91 (alleging that

Defendant Stieve did this once before in 2009). In addition, Plaintiff claims that Defendant

Stieve did not place Plaintiff on any comparable treatment after cancelling his regimen.

PageID.91.  Plaintiff claims that due to this change in his medication, he has suffered intense

spinal, GERD, and IBS pain. PageID. 91.

Even assuming that Plaintiff's spinal pain, GERD, and IBS are serious medical

issues sufficient to satisfy the objective component of his deliberate indifference claim, Plaintiff

has failed to satisfy the subjective component of his claim (that Defendant Stieve acted with a

culpable state of mind when taking Plaintiff off of Nexium). At all relevant times, Defendant

Stieve was part of the Pain Management Committee (PMC), which consisted of a group of

doctors that met regularly to evaluate patients and their pain control regimen in chronic-pain

cases. PageID.1653.  The PMC recognizes that pain medications may be dangerous and subject

to abuse in the prison system, and as such, the PMC aims to use non-pain medication courses of

action when possible (such as "heat, cold, relaxation, stretching, massage, elevation, and physical

therapy"). PageID.1654.  Defendant Stieve indicated that on April 3, 2013, he and the rest of the

PMC committee evaluated Plaintiff's case and determined that "plaintiff did not have a condition

necessarily expected to cause pain requiring Ultram." PageID.745, 1655. Instead, the PMC

recommended that Plaintiff engage in self-massages, heat application, range-of-motion exercises,

walking for twenty to forty minutes daily, and stretching. PageID.776-777, 1655.  Based on this

information, it is clear that Defendant Stieve and the PMC committee considered Plaintiff's

medical condition and concluded that it was in Plaintiff's best interest to end his Ultram

prescription. Plaintiff's disagreement with Defendant Stieve's and the PMC's decision to take

him off of Ultram is not enough to state a deliberate indifference claim against Defendant Stieve.

*See Sanderfer*, 62 F.3d at 154-55 (noting differences in judgment between an inmate and prison

medical personnel regarding the appropriate medical diagnoses or treatment are not enough to

state a deliberate indifference claim). Consequently, Plaintiff's claim against Defendant Stieve

fails.

v. *Defendant Westcomb*

Plaintiff's fifth deliberate indifference claim states that Defendant Westcomb

refused to treat Plaintiff for his pain, GERD, wool allergy, and IBS from March 13 through

October 9, 2013, and that she withheld his continuous positive airway pressure (CPAP) machine

for three days. PageID.92.  In addition, Plaintiff claims that Defendant Westcomb falsified his

medical records. PageID.105.

As before, assuming Plaintiff's IBS, wool allergy, GERD, and need for a CPAP

machine are all serious medical needs satisfying the objective component of his deliberate

indifference claim, Plaintiff's claim against Defendant Westcomb still fails since he has not

satisfied the subjective component (that Defendant acted with a culpable state of mind when

refusing to treat Plaintiff). For example, the records show that Plaintiff regularly refused to be

evaluated by Defendant Westcomb despite her attempts to evaluate him and his conditions. *See*

*generally* ECF No. 65-1. As a result, Defendant Westcomb often had to go to Plaintiff's cell to

try and evaluate his conditions because Plaintiff refused to go to the health center. *See, e.g.,*

PageID.770 (noting on June 24, 2013, Defendant went to Plaintiff's cell to give him an NG tube

and CT scans of his abdomen and head to ensure there was not blood in his stomach, which there

was not).  Moreover, with regard to Plaintiff's claim that he was wrongly deprived of a CPAP

machine for three days, Defendant Westcomb's notes clearly indicate that Plaintiff had not been using the machine as advised, and that she only discontinued use of the machine until Plaintiff was taken out of his soft restraints. *See* PageID.764, 766 (noting on July 25 and 30, 2013 that Defendant went to Plaintiff's cell to evaluate him and saw that Plaintiff had his CPAP machine turned on, but he was not wearing his mask); PageID.763 (noting on August 2, 2013, that Plaintiff "will not be given the CPAP while he is in soft restraints. When he is released from restraints the CPAP will be returned to him."). Based on these medical reports, it is clear that Defendant Westcomb was not deliberately indifferent to Plaintiff's medical needs; rather, Plaintiff merely disagrees with her medical course of action and the way she monitored his conditions. As previously mentioned, Plaintiff's disagreement with Defendant's medical judgments does not satisfy the subjective component of a deliberate indifference claim. *See Sanderfer*, 62 F.3d at 154-55 (noting differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim). As a result, Plaintiff's claim against Defendant Westcomb fails.

### vi. Defendant Corizon Health, Inc.

Plaintiff's final claim is that Defendant Corizon Health, Inc. was deliberately indifferent to his medical needs when it failed to train its MDOC medical personnel in violation of Plaintiff's Eighth Amendment rights. PageID.92. As a result, Plaintiff claims that he suffers from severe pain, rage, hostility, anger, behavior disorders, and sensory deprivations. PageID.92. The Court interprets this allegation as a claim of supervisory liability against Defendant Corizon.

The Sixth Circuit has held that section "1983 liability must be based on more than

-21-

respondeat superior," and that "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Grose v. Caruso*, 284 Fed. App'x 279, 282 (6th Cir. 2008) (quoting *Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982))). At minimum, a plaintiff must show that the supervisory official "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 282-83 (citations omitted); *accord Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). In addition, liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee*, 199 F.3d at 300 (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)).

Here, Plaintiff has not alleged or set forth any facts indicating that Defendant Corizon approved, encouraged, or acquiesced in the misconduct of Defendants Rhodes, Pandya, Stieve, Borgerding, and Westcomb; rather, Plaintiff merely states that Defendant Corizon "[f]ailed to properly train its employees." PageID.92. This Court has already concluded that these five Defendants did not act improperly when treating Plaintiff during the time frames in question. It follows then that Defendant Corizon could not have implicitly authorized these Defendants to engage in misconduct, as no misconduct has been found by this Court. Accordingly, Plaintiff's respondeat superior claim against Defendant Corizon fails.

### III.

Overall, despite the Court's obligation to construe handwritten *pro se* documents liberally, Plaintiff's § 1983 fails. Fed. R. Civ. P. 56; *see Estelle*, 429 U.S. at 106; *Haines v.*

*Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim undoubtedly contains no facts to support its request for relief).  Accordingly, Defendants' Motions for Summary Judgment are appropriate.

In light of the foregoing, this Court concludes that Defendants' Motions for Summary Judgment (ECF No. 108, 112) are **GRANTED** and this case will be dismissed with prejudice in its entirety.  An Order and Judgment consistent with this Opinion will be entered.  In addition, Defendant's motion to intervene (ECF No. 119), motions for a declaratory judgment (ECF No. 131, 150), and motion for a preliminary injunction (ECF No. 137) are denied as moot.

**SO ORDERED**.

Dated:__5/18/2016____                        _/s/ *R. Allan Edgar*_____
                                             R. ALLAN EDGAR
                                             UNITED STATES DISTRICT JUDGE